IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
ANDERSON/GREENWOOD DIVISION

| | | |
|---|---|---|
| Joann West, | ) | Civil Action No. 8:10-1442-DCN-JDA |
| | ) | |
| Plaintiff, | ) | **REPORT AND RECOMMENDATION** |
| | ) | **OF MAGISTRATE JUDGE** |
| vs. | ) | |
| | ) | |
| Michael J. Astrue, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This matter is before the Court for a Report and Recommendation pursuant to Local Rule 73.02(B)(2)(a), D.S.C., and Title 28, United States Code, Section 636(b)(1)(B).[1] Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("the Commissioner"), denying Plaintiff's claim for disability insurance benefits ("DIB") and supplemental security income ("SSI"). For the reasons set forth below, it is recommended that the decision of the Commissioner be affirmed.

## PROCEDURAL HISTORY

Plaintiff protectively filed claims for DIB and SSI on January 23, 2007, alleging a disability onset date of November 15, 2006. [R. 13, 26–27, 45–54.] These claims were initially denied on June 1, 2007 [R. 45–48] and upon reconsideration by the Social Security Administration ("the Administration") on July 11, 2007 [R. 49–52]. Plaintiff requested a

---

[1]A Report and Recommendation is being filed in this case, in which one or both parties declined to consent to disposition by a magistrate judge.

hearing before an administrative law judge ("ALJ") [R. 62, 67], and on June 10, 2009, a hearing was held before ALJ Kim D. Parrish [R. 24–44].

By decision dated September 28, 2009, the ALJ determined Plaintiff was not disabled within the meaning of the Social Security Act ("the Act"). [R. 10–23.] Following his review of the evidence, the ALJ found Plaintiff had severe impairments, including chest pain, hypertension, depressive disorder, and post-traumatic stress disorder [R. 15, Finding 3], but did not have an impairment or combination of impairments that meets or medically equals one of the impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 [R. 15, Finding 4]. The ALJ also found Plaintiff has the residual functional capacity to perform a full range of work at all exertional levels, although Plaintiff has the following nonexertional limitations: concentration necessary for unskilled work and work in relative isolation, with limited contact with peers and supervisors. [R. 17, Finding 5.] With these restrictions, the ALJ determined Plaintiff was able to perform past relevant work as a bakery line worker and in housekeeping, but the ALJ also determined other jobs existed in significant numbers in the national economy Plaintiff could perform, including office helper and mail clerk. [R. 21–22, Finding 6]. On April 5, 2010, the ALJ's findings became the final decision of the Commissioner when the Appeals Council denied Plaintiff's request for review of the hearing decision. [R. 1–5; 20 C.F.R. §§ 404.981, 416.1481.] Plaintiff filed this action for judicial review on June 4, 2010. [Doc. 1.]

## THE PARTIES' POSITIONS

Plaintiff contends the ALJ (1) provided an improper hypothetical to the vocational expert; (2) improperly evaluated a medical opinion; and (3) improperly determined

2

Plaintiff's residual functional capacity ("RFC").  Plaintiff also contends the Appeals Council erred in failing to properly consider new evidence.

The Commissioner contends the ALJ's decision is supported by substantial evidence and must be affirmed.  The Commissioner also contends the evidence submitted to the Appeals Council postdated the ALJ's decision, and thus, this evidence was not probative of Plaintiff's condition for the time period for which benefits were denied.

## STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—i.e., the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *See Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966) (citing *Woolridge v. Celebrezze*, 214 F. Supp. 686, 687 (S.D.W. Va. 1963)) ("Substantial evidence, it has been held, is evidence which a reasoning mind would accept as sufficient to support a particular conclusion.  It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance.  If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is 'substantial evidence.'").

Where conflicting evidence "'allows reasonable minds to differ as to whether a claimant is disabled, the responsibility for that decision falls on the [Commissioner] (or the [Commissioner's] designate, the ALJ),'" not on the reviewing court.  *Craig v. Chater*, 76

F.3d 585, 589 (4th Cir. 1996) (quoting *Walker v. Bowen*, 834 F.2d 635, 640 (7th Cir. 1987)); *see also Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991) (stating that where the Commissioner's decision is supported by substantial evidence, the court will affirm, even if the reviewer would have reached a contrary result as finder of fact and even if the reviewer finds that the evidence preponderates against the Commissioner's decision). Thus, it is not within the province of a reviewing court to determine the weight of the evidence, nor is it the court's function to substitute its judgment for that of the Commissioner so long as the decision is supported by substantial evidence. *Laws*, 368 F.2d at 642; *Snyder v. Ribicoff*, 307 F.2d 518, 520 (4th Cir. 1962).

The reviewing court will reverse a Commissioner's decision on plenary review, however, if the decision applies incorrect law or fails to provide the court with sufficient reasoning to determine that the Commissioner properly applied the law. *Myers v. Califano,* 611 F.2d 980, 982 (4th Cir. 1980); *see also Keeton v. Dep't of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994). Where the Commissioner's decision "is in clear disregard of the overwhelming weight of the evidence, Congress has empowered the courts to modify or reverse the [Commissioner's] decision 'with or without remanding the cause for a rehearing.'" *Vitek v. Finch*, 438 F.2d 1157, 1158 (4th Cir. 1971) (quoting 42 U.S.C. § 405(g)). Remand is unnecessary where "the record does not contain substantial evidence to support a decision denying coverage under the correct legal standard and when reopening the record for more evidence would serve no purpose." *Breeden v. Weinberger*, 493 F.2d 1002, 1012 (4th Cir. 1974).

4

The court may remand a case to the Commissioner for a rehearing under sentence four or sentence six of 42 U.S.C. § 405(g). *Sargent v. Sullivan*, 941 F.2d 1207 (4th Cir. 1991) (unpublished table decision). To remand under sentence four, the reviewing court must find either that the Commissioner's decision is not supported by substantial evidence or that the Commissioner incorrectly applied the law relevant to the disability claim. *See, e.g.*, *Jackson v. Chater*, 99 F.3d 1086, 1090–91 (11th Cir. 1996) (holding remand was appropriate where the ALJ failed to develop a full and fair record of the plaintiff's residual functional capacity); *Brehem v. Harris*, 621 F.2d 688, 690 (5th Cir. 1980) (holding remand was appropriate where record was insufficient to affirm but was also insufficient for court to find the plaintiff disabled). Where the court cannot discern the basis for the Commissioner's decision, a remand under sentence four may be appropriate to allow the Commissioner to explain the basis for the decision. *See Smith v. Heckler*, 782 F.2d 1176, 1181–82 (4th Cir. 1986) (remanding case where decision of ALJ contained "a gap in its reasoning" because ALJ did not say he was discounting testimony or why); *Gordon v. Schweiker*, 725 F.2d 231, 235 (4th Cir. 1984) (remanding case where neither the ALJ nor the Appeals Council indicated the weight given to relevant evidence). On remand under sentence four, the ALJ should review the case on a complete record, including any new material evidence. *See Smith*, 782 F.2d at 1182 ("The [Commissioner] and the claimant may produce further evidence on remand."). After a remand under sentence four, the court enters a final and immediately appealable judgment and then loses jurisdiction. *Sargent*, 941 F.2d 1207 (citing *Melkonyan v. Sullivan*, 501 U.S. 89, 102 (1991)).

In contrast, sentence six provides:

5

> The court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding . . . .

42 U.S.C. § 405(g).  A reviewing court may remand a case to the Commissioner on the basis of new evidence only if four prerequisites are met: (1) the evidence is relevant to the determination of disability at the time the application was first filed; (2) the evidence is material to the extent that the Commissioner's decision might reasonably have been different had the new evidence been before him; (3) there is good cause for the claimant's failure to submit the evidence when the claim was before the Commissioner; and (4) the claimant made at least a general showing of the nature of the new evidence to the reviewing court. *Borders v. Heckler*, 777 F.2d 954, 955 (4th Cir. 1985) (citing 42 U.S.C. § 405(g); *Mitchell v. Schweiker*, 699 F.2d 185, 188 (4th Cir. 1983); *Sims v. Harris*, 631 F.2d 26, 28 (4th Cir. 1980); *King v. Califano*, 599 F.2d 597, 599 (4th Cir. 1979)), *superseded by amendment to statute*, 42 U.S.C. § 405(g), *as recognized in Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 925 F.2d 769, 774 (4th Cir. 1991).[2]  With remand under sentence six, the parties must return to the court after remand to file modified findings of fact. *Melkonyan*, 501 U.S. at 98.  The reviewing court retains jurisdiction pending remand and does not enter a final judgment until after the completion of remand proceedings.  *See*

---

[2]Though the court in *Wilkins* indicated in a parenthetical that the four-part test set forth in *Borders* had been superseded by an amendment to 42 U.S.C. § 405(g), courts in the Fourth Circuit have continued to cite the requirements outlined in *Borders* when evaluating a claim for remand based on new evidence.  *See, e.g.*, *Ashton v. Astrue*, No. 6:10-cv-152, 2010 WL 5478646, at *8 (D.S.C. Nov. 23, 2010); *Washington v. Comm'r of Soc. Sec.*, No. 2:08-cv-93, 2009 WL 86737, at *5 (E.D. Va. Jan. 13, 2009); *Brock v. Sec'y of Health & Human Servs.*, 807 F. Supp. 1248, 1250 n.3 (S.D.W. Va. 1992).  Further, the Supreme Court of the United States has not suggested *Borders*' construction of § 405(g) is incorrect.  *See Sullivan v. Finkelstein*, 496 U.S. 617, 626 n.6 (1990).  Accordingly, the Court will apply the more stringent *Borders* inquiry.

6

*Allen v. Chater*, 67 F.3d 293 (4th Cir. 1995) (unpublished table decision) (holding that an order remanding a claim for Social Security benefits pursuant to sentence six of 42 U.S.C. § 405(g) is not a final order).

## APPLICABLE LAW

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are under a disability.  42 U.S.C. § 423(a).  "Disability" is defined as:

> the inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 consecutive months.

*Id.* § 423(d)(1)(A).

## I.      The Five Step Evaluation

To facilitate uniform and efficient processing of disability claims, federal regulations have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g.*, *Heckler v. Campbell*, 461 U.S. 458, 461 n.2 (1983) (noting a "need for efficiency" in considering disability claims).   The ALJ must consider whether (1) the claimant is engaged in substantial gainful activity; (2) the claimant has a severe impairment; (3) the impairment meets or equals an impairment included in the Administration's Official Listings of Impairments found at 20 C.F.R. Pt. 404, Subpt. P, App. 1; (4) the impairment prevents the claimant from performing past relevant work; and (5) the impairment prevents the claimant from having substantial gainful employment.  20 C.F.R. §§ 404.1520, 416.920. Through the fourth step, the burden of production and proof is on the claimant.  *Grant v.*

7

*Schweiker*, 699 F.2d 189, 191 (4th Cir. 1983). The claimant must prove disability on or before the last day of her insured status to receive disability benefits. *Everett v. Sec'y of Health, Educ. & Welfare*, 412 F.2d 842, 843 (4th Cir. 1969). If the inquiry reaches step five, the burden shifts to the Commissioner to produce evidence that other jobs exist in the national economy that the claimant can perform, considering the claimant's age, education, and work experience. *Id.* If at any step of the evaluation the ALJ can find an individual is disabled or not disabled, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a)(4); *Hall v. Harris*, 658 F.2d 260, 264 (4th Cir. 1981).

### A.    *Substantial Gainful Activity*

"Substantial gainful activity" must be both substantial—involves doing significant physical or mental activities, 20 C.F.R. §§ 404.1572(a), 416.972(a)—and gainful—done for pay or profit, whether or not a profit is realized, 20 C.F.R. §§ 404.1572(b), 416.972(b). If an individual has earnings from employment or self-employment above a specific level set out in the regulations, he is generally presumed to be able to engage in substantial gainful activity. 20 C.F.R. §§ 404.1574–.1575, 416.974–.975.

### B.    *Severe Impairment*

An impairment is "severe" if it significantly limits an individual's ability to perform basic work activities. See 20 C.F.R. §§ 404.1521, 416.921. When determining whether a claimant's physical and mental impairments are sufficiently severe, the ALJ must consider the combined effect of all of the claimant's impairments. 42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G). The ALJ must evaluate a disability claimant as a whole

8

person and not in the abstract, having several hypothetical and isolated illnesses. *Walker v. Bowen*, 889 F.2d 47, 49–50 (4th Cir. 1989) (stating that, when evaluating the effect of a number of impairments on a disability claimant, "the [Commissioner] must consider the combined effect of a claimant's impairments and not fragmentize them").  Accordingly, the ALJ must make specific and well-articulated findings as to the effect of a combination of impairments when determining whether an individual is disabled.  *Id.* at 50 ("As a corollary to this rule, the ALJ must adequately explain his or her evaluation of the combined effects of the impairments.").  If the ALJ finds a combination of impairments to be severe, "the combined impact of the impairments shall be considered throughout the disability determination process."  42 U.S.C. §§ 423(d)(2)(B), 1382c(a)(3)(G).

### C.    *Meets or Equals an Impairment Listed in the Listings of Impairments*

If a claimant's impairment or combination of impairments meets or medically equals the criteria of a listing found at 20 C.F.R. Pt. 404, Subpt. P, App.1 and meets the duration requirement found at 20 C.F.R. §§ 404.1509 or 416.909, the ALJ will find the claimant disabled without considering the claimant's age, education, and work experience.  20 C.F.R. §§ 404.1520(d), 416.920(a)(4)(iii), (d).

### D.    *Past Relevant Work*

The assessment of a claimant's ability to perform past relevant work "reflect[s] the statute's focus on the functional capacity retained by the claimant."  *Pass v. Chater*, 65 F.3d 1200, 1204 (4th Cir. 1995).  At this step of the evaluation, the ALJ compares the

claimant's residual functional capacity[3] with the physical and mental demands of the kind of work he has done in the past to determine whether the claimant has the residual functional capacity to do his past work.  20 C.F.R. §§ 404.1560(b), 416.960(b).

    **E.**    ***Other Work***

As previously stated, once the ALJ finds that a claimant cannot return to her prior work, the burden of proof shifts to the Commissioner to establish that the claimant could perform other work that exists in the national economy.  *See* 20 C.F.R. §§ 404.1520(f)–(g), 416.920(f)–(g);  *Hunter v. Sullivan*, 993 F.2d 31, 35 (4th Cir. 1992).  To meet this burden, the Commissioner may sometimes rely exclusively on the Medical-Vocational Guidelines (the "grids").  Exclusive reliance on the "grids" is appropriate where the claimant suffers primarily from an exertional impairment, without significant nonexertional factors.[4]  20 C.F.R. Pt. 404, Subpt. P, App. 2, § 200.00(e); *Gory v. Schweiker*, 712 F.2d 929, 930–31 (4th Cir. 1983) (stating that exclusive reliance on the grids is appropriate in cases involving exertional limitations).  When a claimant suffers from both exertional and nonexertional limitations, the grids may serve only as guidelines.  *Gory*, 712 F.2d at 931.  In such a case, the Commissioner must use a vocational expert to establish the claimant's ability to perform other work.  20 C.F.R. §§ 404.1569a, 416.969a; *see Walker*, 889 F.2d at 49–50

---

[3]Residual functional capacity is "the most [a claimant] can do despite [his] limitations."  20 C.F.R. § 404.1545(e)

[4]An exertional limitation is one that affects the claimant's ability to meet the strength requirements of jobs. 20 C.F.R. § 404.1569a.  A nonexertional limitation is one that affects the ability to meet the demands of the job other than the strength demands.  *Id.*  Examples of nonexertional limitations include but are not limited to difficulty functioning because of being nervous, anxious, or depressed; difficulty maintaining attention or concentrating; difficulty understanding or remembering detailed instructions; difficulty seeing or hearing.  *Id.*

("Because we have found that the grids cannot be relied upon to show conclusively that claimant is not disabled, when the case is remanded it will be incumbent upon the [Commissioner] to prove by expert vocational testimony that despite the combination of exertional and nonexertional impairments, the claimant retains the ability to perform specific jobs which exist in the national economy.").  The purpose of using a vocational expert is "to assist the ALJ in determining whether there is work available in the national economy which this particular claimant can perform."  *Walker*, 889 F.2d at 50.  For the vocational expert's testimony to be relevant, "it must be based upon a consideration of all other evidence in the record, . . . and it must be in response to proper hypothetical questions which fairly set out all of claimant's impairments."  *Id.* (citations omitted).

## II.    Developing the Record

The ALJ has a duty to fully and fairly develop the record.  *See Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986).  The ALJ is required to inquire fully into each relevant issue.  *Snyder*, 307 F.2d at 520.  The performance of this duty is particularly important when a claimant appears without counsel.  *Marsh v. Harris*, 632 F.2d 296, 299 (4th Cir. 1980).  In such circumstances, "the ALJ should scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts, . . . being especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited."  *Id.* (internal quotations and citations omitted).

III.    **Treating Physicians**

The opinion of a claimant's treating physician must "be given great weight and may be disregarded only if there is persuasive contradictory evidence" in the record. *Coffman v. Bowen*, 829 F.2d 514, 517 (4th Cir. 1987) (citing *Foster v. Heckler*, 780 F.2d 1125, 1130 (4th Cir. 1986) (holding that a treating physician's testimony is entitled to great weight because it reflects an expert judgment based on a continuing observation of the patient's condition over a prolonged period of time); *Mitchell v. Schweiker*, 699 F.2d 185, 187 (4th Cir. 1983)). If a treating physician's opinion on the nature and severity of a claimant's impairments is "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record, the ALJ must give it controlling weight. 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2); *see Mastro v. Apfel*, 270 F.3d 171, 178 (4th Cir. 2001). The ALJ may discount a treating physician's opinion if it is unsupported or inconsistent with other evidence. *Craig*, 76 F.3d at 590. Similarly, where a treating physician has merely made conclusory statements, the ALJ may afford the opinion such weight as is supported by clinical or laboratory findings and other consistent evidence of a claimant's impairments. *See id.* (holding there was sufficient evidence for the ALJ to reject the treating physician's conclusory opinion where the record contained contradictory evidence).

When a treating physician's opinion does not warrant controlling weight, the ALJ must nevertheless assign a weight to the medical opinion based on the 1) length of the treatment relationship and the frequency of examination; 2) nature and extent of the

treatment relationship; 3) supportability of the opinion; 4) consistency of the opinion with the record a whole; 5) specialization of the physician; and 6) other factors which tend to support or contradict the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In any instance, a treating physician's opinion is generally entitled to more weight than a consulting physician's opinion. *See Mitchell*, 699 F.2d at 187 (stating that treating physician's opinion must be accorded great weight because "it reflects an expert judgment based on a continuing observation of the patient's condition for a prolonged period of time"); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  An ALJ determination coming down on the side of a non-examining, non-treating physician's opinion can stand only if the medical testimony of examining and treating physicians goes both ways. *Smith v. Schweiker*, 795 F.2d 343, 346 (4th Cir.1986).

The ALJ is required to review all of the medical findings and other evidence that support a medical source's statement that a claimant is disabled.  20 C.F.R. §§ 404.1527(e), 416.927(e).  However, the ALJ is responsible for making the ultimate determination about whether a claimant meets the statutory definition of disability.  *Id.*

## IV.    Medical Tests and Examinations

The ALJ is required to order additional medical tests and exams only when a claimant's medical sources do not give sufficient medical evidence about an impairment to determine whether the claimant is disabled.  20 C.F.R. §§ 404.1517, 416.917; *see also Conley v. Bowen*, 781 F.2d 143, 146 (8th Cir. 1986).  The regulations are clear: a consultative examination is not required when there is sufficient medical evidence to make

13

a determination on a claimant's disability.  20 C.F.R. §§ 404.1517, 416.917.  Under the regulations, however, the ALJ may determine that a consultative examination or other medical tests are necessary.  *Id.*

## V.    Pain

Congress has determined that a claimant will not be considered disabled unless he furnishes medical and other evidence (e.g., medical signs and laboratory findings) showing the existence of a medical impairment that could reasonably be expected to produce the pain or symptoms alleged.  42 U.S.C. § 423(d)(5)(A).  In evaluating claims of disabling pain, the ALJ must proceed in a two-part analysis.  *Morgan v. Barnhart,* 142 F. App'x 716, 723 (4th Cir. 2005) (unpublished opinion).  First, "the ALJ must determine whether the claimant has produced medical evidence of a 'medically determinable impairment which could reasonably be expected to produce . . . the actual pain, in the amount and degree, alleged by the claimant.'"  *Id.* (quoting *Craig,* 76 F.3d at 594).  Second, "if, and only if, the ALJ finds that the claimant has produced such evidence, the ALJ must then determine, as a matter of fact, whether the claimant's underlying impairment *actually* causes her alleged pain."  *Id*. (emphasis in original) (citing *Craig*, 76 F.3d at 595).

Under the Fourth Circuit's "pain rule," it is well established that "subjective complaints of pain and physical discomfort can give rise to a finding of total disability, even when those complaints [a]re not supported fully by objective observable signs."  *Coffman*, 829 F.2d at 518.  The ALJ must consider all of a claimant's statements about his symptoms, including pain, and determine the extent to which the symptoms can reasonably

14

be accepted as consistent with the objective medical evidence. 20 C.F.R. §§ 404.1528,

416.928.  Indeed, the Fourth Circuit has rejected a rule which would require the claimant

to demonstrate objective evidence of the pain itself, *Jenkins v. Sullivan*, 906 F.2d 107, 108

(4th Cir. 1990), and ordered the Commissioner to promulgate and distribute to all

administrative law judges within the circuit a policy stating Fourth Circuit law on the subject

of pain as a disabling condition, *Hyatt v. Sullivan*, 899 F.2d 329, 336–37 (4th Cir. 1990).

The Commissioner thereafter issued the following "Policy Interpretation Ruling":

> This Ruling supersedes, only in states within the Fourth Circuit (North Carolina, South Carolina, Maryland, Virginia and West Virginia), Social Security Ruling (SSR) 88-13, Titles II and XVI: Evaluation of Pain and Other Symptoms:
>
> ...
>
> **FOURTH CIRCUIT STANDARD:** Once an underlying physical or [m]ental impairment that could reasonably be expected to cause pain is shown by medically acceptable objective evidence, such as clinical or laboratory diagnostic techniques, the adjudicator must evaluate the disabling effects of a disability claimant's pain, even though its intensity or severity is shown only by subjective evidence.  If an underlying impairment capable of causing pain is shown, subjective evidence of the pain, its intensity or degree can, by itself, support a finding of disability.  Objective medical evidence of pain, its intensity or degree (i.e., manifestations of the functional effects of pain such as deteriorating nerve or muscle tissue, muscle spasm, or sensory or motor disruption), if available, should be obtained and considered.  Because pain is not readily susceptible of objective proof, however, the absence of objective medical evidence of the intensity, severity, degree or functional effect of pain is not determinative.

SSR 90-1p, 55 Fed. Reg. 31, 898-02 (Aug. 6, 1990), *superseded by* SSR 96-7p, 61 Fed.

Reg. 34,483-01 (July 2, 1996) ("If an individual's statements about pain or other symptoms

are not substantiated by the objective medical evidence, the adjudicator must consider all

15

of the evidence in the case record, including any statements by the individual and other persons concerning the individual's symptoms."); *see* 20 C.F.R. §§ 404.1529(c)(1)–(c)(2), 416.929(c)(1)–(c)(2).

## VI.     Credibility

The ALJ must make a credibility determination based upon all the evidence in the record.  Where an ALJ decides not to credit a claimant's testimony about pain, the ALJ must articulate specific and adequate reasons for doing so, or the record must be obvious as to the credibility finding.  *Hammond v. Heckler*, 765 F.2d 424, 426 (4th Cir. 1985). Although credibility determinations are generally left to the ALJ's discretion, such determinations should not be sustained if they are based on improper criteria.  *Breeden*, 493 F.2d at 1010 ("We recognize that the administrative law judge has the unique advantage of having heard the testimony firsthand, and ordinarily we may not disturb credibility findings that are based on a witness's demeanor.  But administrative findings based on oral testimony are not sacrosanct, and if it appears that credibility determinations are based on improper or irrational criteria they cannot be sustained.").

## APPLICATION AND ANALYSIS

**Weight Assigned to Medical Opinions**

Plaintiff contends the ALJ failed to properly evaluate the opinion evidence of the Administration's consultative examiner, James Ruffing, Psy.D.  Plaintiff argues Dr. Ruffing found Plaintiff's ability to deal with people was seriously compromised because Dr. Ruffing stated that Plaintiff "may have difficulty focusing and attending fully as a result of her emotional distress and instability.  [Plaintiff] appears to harbor a great deal of anger,

16

irritability, and resentment which would likely interfere with her capacity to relate appropriately to others." [R. 223.] Plaintiff argues the ALJ ignored the totality of Dr. Ruffing's findings, which set out considerable limitation of function. Plaintiff, however, fails to identify the functional limitations she contends the ALJ ignored.

The Fourth Circuit has stated that "the testimony of a non-examining, non-treating physician should be discounted and is not substantial evidence when totally contradicted by other evidence in the record." *Gordon*, 725 F.2d at 235 (citing *Martin v. Secretary*, 492 F.2d 905 (4th Cir. 1974)). However, "the testimony of a non-examining physician can be relied upon when it is consistent with the record." *Id.* (citing *Kyle v. Cohen*, 449 F.2d 489, 492 (4th Cir. 1971)); *see also Smith v. Schweiker*, 795 F.2d 343, 345–46 (4th Cir. 1986) (stating that an opinion of non-examining physician can constitute substantial evidence to support the decision of the Commissioner).

Here, Plaintiff fails to identify or cite to any evidence in the record that is consistent with Dr. Ruffing's opinions or findings, which would show that Dr. Ruffing's opinion could be relied upon. Further, Plaintiff put forth no basis for finding the reasoning of the ALJ was flawed or skewed in any way, other than asserting the ALJ failed to provide an explanation of the weight given to Dr. Ruffing's opinion. Moreover, Plaintiff has failed to identify any authority that requires an ALJ to explicitly assign a weight to a non-treating physician's opinion. *See* 20 C.F.R. §§ 404.1527(d), 416.927(d) (requiring an ALJ to assign a weight to a treating physician's opinion); *Thompson v. Astrue*, No. 07-2989, 2009 WL 7007996, at *5–6 (E.D. Pa. Jan. 30, 2009) (stating the ALJ does not need to use particular language or a particular format in conducting the RFC analysis). Plaintiff even acknowledged that the ALJ devoted a significant portion of the mental component of his RFC discussion to Dr.

17

Ruffing's findings.    Finally, the Court finds the ALJ's RFC assessment, which acknowledges Plaintiff's limited ability to concentrate, is consistent with Dr. Ruffing's opinion, which finds Plaintiff "may have difficulty focusing and attending fully."[5] Accordingly, the Court finds the ALJ's failure to explicitly assign a weight to Dr. Ruffing's opinion does not preclude the Court from finding the ALJ's RFC assessment is supported by substantial evidence, and as discussed below, the Court finds the ALJ's RFC assessment is so supported.

**RFC Determination**

Plaintiff argues the ALJ's RFC assessment is inadequate because (1) there is no evidence that the ALJ considered Plaintiff's obesity either by itself or in combination with her other impairments when assessing her RFC; (2) the ALJ merely gave the broad finding that Plaintiff could perform the full range of work at all exertional levels without any finding of the amount Plaintiff can lift, carry, stand, walk, and sit; (3) the ALJ assessed a non-exertional limitation of limited contact with peers and supervisors but did not indicate the degree to which contact should be limited.

### *Obesity*

The Commissioner argues Plaintiff did not allege disabling obesity in her application for disability benefits or at her hearing.  The Commissioner also contends Plaintiff reported her condition did not affect her abilities to lift, squat, bend, stand, reach, walk, sit, kneel, climb stairs, or use her hands, and the ALJ may rely on a claimant's own statement of

---

[5]As another example of consistency, Dr. Xanthia Harkness's opinion is consistent with Dr. Ruffing's opinion; Dr. Harkness, a consultative examiner, determined Plaintiff had only moderate limitations in her abilities to understand, remember, and carry out detailed instructions and maintain attention and concentration for extended periods.  [R. 249.]

limitations in evaluating disability. Lastly, the Commissioner notes that, while obesity appears to have been clinically diagnosed in passing, this condition went without specific treatment, follow-up, or other recommendations, with the exception of one emergency treatment.

Plaintiff never claimed obesity as a basis for her claims of disability [R. 30, 35, 133, 136–38, 165–66, 176–78] and, therefore, is now estopped from challenging the failure of the ALJ to consider it as such. *See, e.g.*, *Street v. Barnhart*, 133 F. App'x 621, 627 (11th Cir. 2005) (stating that the ALJ is under no obligation to investigate a claim not presented in the application nor offered at the hearing as a basis for disability) (quoting *Pena v. Chater*, 76 F.3d 906, 909 (8th Cir. 1996)); *see also Sullins v. Shalala*, 25 F.3d 601, 604 (8th Cir. 1994) (finding the ALJ did not err in failing to include alleged impairments in hypothetical to vocational expert when the claimant presented no evidence that the alleged impairment was disabling, did not claim the alleged disabling impairment in her application for disability benefits, and did not offer the alleged impairment as a basis for disability at the hearing). Further, even though the ALJ was not required to consider obesity, the Court finds the ALJ considered Plaintiff's complaints related to obesity because the ALJ adopted the limitations suggested by Plaintiff's physicians and the consultative examiners. *See Rutherford v. Barnhart*, 399 F.3d 546, 553 (3d Cir. 2005) (finding the ALJ's adoption of physicians' conclusions, when the physicians were aware of the claimant's "obvious obesity," constituted satisfactory consideration of the claimant's obesity and declining to remand the case because explicitly considering the claimant's obesity would not affect the outcome of the case). Moreover, while obesity can cause limitation in exertional and postural functions such as sitting, standing, walking, lifting, carrying, pushing, pulling,

19

climbing, balancing, stooping, crouching, the ability to manipulate, and the ability to tolerate environmental extremes, SSR 02-1p, 67 Fed. Reg. 57,859-02, 57,862 (Sept. 12, 2002), there is no evidence Plaintiff's alleged obesity ever produced exertional limitations upon Plaintiff's abilities.[6]  Consequently, any error resulting from the ALJ's failure to explicitly consider Plaintiff's alleged obesity is harmless.  *Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004) (finding harmless error where the ALJ did not address the claimant's obesity but did adopt the limitations suggested by the specialists and reviewing physicians,  who were aware of the claimant's obesity); *Elder v. Astrue*, No. 3:09-2365, 2010 WL 3980105, at *9 (D.S.C. Oct. 8, 2010) ("As neither her medical records, nor her own statements, provide [evidence of the effect on her functioning or ability to work resulting from] her obesity, any failure of the ALJ to explicitly address [the claimant]'s obesity is only harmless error.").

### *Function-by-Function Assessment of Exertional Limitations*

Plaintiff asserts a function-by-function assessment is necessary in every claim because the failure to perform the assessment could result in the adjudicator overlooking some of an individual's limitations or restrictions, and thus, it was error for the ALJ to find Plaintiff could perform the full range of work at all exertional levels without finding the amount Plaintiff can lift, carry, stand, walk, and sit.

The Administration has described the RFC assessment as follows:

---

[6]"The assessment of RFC must . . . be concerned with the impact of a disease process or injury" on the claimant and not the claimant's age or body habitus.  SSR 96-8p, 61 Fed. Reg. 34,474-01, 34,476 n.5 (July 2, 1996).  As discussed more fully below, Plaintiff indicated her impairments did not affect her exertional abilities [R. 146]; therefore, the Court finds the RFC assessment is consistent with the substantial evidence of record and properly assessed the diseases or injuries that impacted Plaintiff.

The RFC assessment is a function-by-function assessment based upon all of the relevant evidence of [a claimant]'s ability to do work-related activities. At step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories of "sedentary," "light," "medium," "heavy," and "very heavy" work because the first consideration at this step is whether the [claimant] can do past relevant work as he or she actually performed it.

RFC may be expressed in terms of an exertional category, such as light, if it becomes necessary to assess whether [a claimant] is able to do his or her past relevant work as it is generally performed in the national economy. However, without the initial function-by-function assessment of the [claimant]'s physical and mental capacities, it may not be possible to determine whether the [claimant] is able to do past relevant work as it is generally performed in the national economy because particular occupations may not require all of the exertional and nonexertional demands necessary to do the full range of work at a given exertional level.

SSR 96-8p, 61 Fed. Reg. 34,474-01, 34,476 (July 2, 1996). In the course of his assessment, the ALJ must discuss the claimant's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis. *Id.* at 34,478. Further, the Administration has provided guidance as to how the ALJ assesses a claimant's exertional capacity:

Exertional capacity addresses [a claimant]'s limitations and restrictions of physical strength and defines the [claimant]'s remaining abilities to perform each of seven strength demands: Sitting, standing, walking, lifting, carrying, pushing, and pulling. Each function must be considered separately (e.g., "the individual can walk for 5 out of 8 hours and stand for 6 out of 8 hours"), even if the final RFC assessment will combine activities (e.g., "walk/stand, lift/carry, push/pull"). Although the regulations describing the exertional levels of work . . . pair some functions, it is not invariably the case that treating the activities together will result in the same decisional outcome as treating them separately.

21

> It is especially important that adjudicators consider the capacities separately when deciding whether an individual can do past relevant work. . . .

*Id.* at 34,477.  As the Administration has made clear, the ALJ should assess a claimant's ability to perform the seven strength demands, which is part of the function-by-function assessment of the claimant's abilities.

However, not all courts remand for an ALJ's failure to assess a claimant's abilities on a function-by-function basis.  *Vo v. Astrue*, 518 F. Supp. 2d 715, 731 (D.S.C. 2007) (noting that not all courts remand on the basis of an ALJ's failure to perform a function-by-function analysis but because the court was remanding for another reason, the court provided the ALJ with instructions to explicitly discuss the claimant's abilities on a function-by-function basis); *see Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 149 n.5 (3d Cir. 2007) (noting that SSR 96-8p requires a function-by-function assessment and rejecting the claimant's argument that the ALJ's finding at step four was in error because the court found the RFC assessment was supported by substantial evidence); *see also Thompson*, 2009 WL 7007996, at *5–6 (citing *Salles* for the proposition that the ALJ does not need to use particular language or a particular format in conducting the RFC analysis and upholding the ALJ's RFC because it was supported by substantial evidence).

Moreover, it is a claimant's burden to establish disability in steps one through four of the sequential evaluation, *Grant*, 699 F.2d at 191; therefore, Plaintiff bore the burden of establishing her exertional limitations.  Additionally, the Administration has determined that in assessing RFC, the ALJ

> must consider only limitations and restrictions attributable to medically determinable impairments. It is incorrect to find that

22

> [a claimant] has limitations or restrictions beyond those caused
> by his or her medical impairment(s) including any related
> symptoms, such as pain, due to factors such as age or height,
> or whether the[claimant] had ever engaged in certain activities
> in his or her past relevant work (e.g., lifting heavy weights.)
> Age and body habitus (i.e., natural body build, physique,
> constitution, size, and weight, insofar as they are unrelated to
> the [claimant]'s medically determinable impairment(s) and
> related symptoms) are not factors in assessing RFC . . . .

SSR 96-8p, 61 Fed. Reg. at 34,476.    In a Function Report—an Administration
questionnaire—completed by Plaintiff in February 2007 [R. 141–48], Plaintiff indicated that
her illnesses, injuries, or conditions affected only her memory, ability to complete tasks,
concentration, understanding, and ability to get along with others [R. 146]. She did not
check any of the available boxes relating to physical abilities, including lifting, squatting,
bending, standing, reaching, walking, sitting, kneeling, talking, hearing, stair climbing,
seeing, and using hands. [*Id.*] Further, in Plaintiff's RFC assessment, the ALJ considered
Plaintiff's complaints of chest pain, shortness of breath, panic attacks, depression, anxiety,
mood changes, low energy, poor appetite, and family relational problems, as well as
Plaintiff's provisional diagnoses of major depressive disorder and post-traumatic stress
disorder. [R. 17.] Because these were the medical conditions for which Plaintiff received
treatment, the Court finds these conditions were Plaintiff's medically determinable
impairments, the ALJ properly assessed Plaintiff's RFC based on these impairments, and
Plaintiff did not carry her burden of establishing any alleged exertional limitations.[7]
Therefore, the ALJ's RFC assessment, which imposed no exertional limitations, is

---

[7]The Court notes that the ALJ considered each of Plaintiff's medically determinable impairments in detail.
[R. 17–21.] While the ALJ did not state Plaintiff's RFC in terms of the amount Plaintiff can sit, stand, walk,
lift, carry, push, and pull as part of work-related activities, the ALJ's discussion of the RFC assessment
supports the ALJ's conclusion that Plaintiff does not have any limits in these exertional functions.

23

consistent with the record and supported by substantial evidence.  *See* SSR 96-8p, 61

Fed. Reg. at 34,476 (stating that where there is no information in the record that supports

a physical limitation or restriction of a specific functional capacity, the ALJ must consider

the individual to have no limitation or restriction with respect to that functional capacity).

### *Degree of Non-Exertional Limitation*[8]

Plaintiff contends the ALJ indicated Plaintiff would need to be "limited in contact with

peers and supervisors" but did not indicate to what degree contact should be limited.  The

Commissioner argues this was not error because Dr. Popkin, upon whose assessment

Plaintiff, through counsel, based her hypothetical question at the hearing, expressly stated

that although proximity to others should not be intensive or prolonged, Plaintiff was able

to appropriately manage at least casual and informal contact with the general public,

---

[8]The Administration addressed the role of nonexertional limitations in an RFC assessment as follows:

> Nonexertional capacity considers all work-related limitations and restrictions that do not depend on [a claimant]'s physical strength; i.e., all physical limitations and restrictions that are not reflected in the seven strength demands, and mental limitations and restrictions. It assesses [a claimant]'s abilities to perform physical activities such as postural (e.g., stooping, climbing), manipulative (e.g., reaching, handling), visual (seeing), communicative (hearing, speaking), and mental (e.g., understanding and remembering instructions and responding appropriately to supervision). In addition to these activities, it also considers the ability to tolerate various environmental factors (e.g., tolerance of temperature extremes).

> As with exertional capacity, nonexertional capacity must be expressed in terms of work-related functions. . . . Work-related mental activities generally required by competitive, remunerative work include the abilities to: understand, carry out, and remember instructions; use judgment in making work-related decisions; respond appropriately to supervision, co-workers and work situations; and deal with changes in a routine work setting.

SSR 96-8p, 61 Fed. Reg. at 34,476.

24

co-workers, and supervisors, and was likely able to accept and utilize supervision and respond to appropriate levels of feedback and cognitive instructions.

Plaintiff fails to direct the Court to any basis for finding error in the ALJ's failure to consider the degree to which Plaintiff's contact with peers and supervisors should be limited.  [*See* Doc. 12 at 32–33.]  Moreover, the Court finds that the degree of limited contact is indicated in the full statement of the limitation—the ALJ found Plaintiff "requires . . . work in *relative isolation* with limited contact with peers and supervisors."  [R. 17 (emphasis added).]  The Court finds "relative isolation" sufficiently defines the degree of limited contact Plaintiff should have with peers and supervisors.[9]  Accordingly, the Court finds the ALJ is not required to explicitly "indicate to what degree contact would be limited," and, therefore, his failure to do so is not error.

**Hypothetical to the Vocational Expert**

Plaintiff contends the ALJ failed to provide the vocational expert with a proper hypothetical.  Plaintiff argues the hypothetical was improper because the assumptions of the hypothetical given to the vocational expert did not match Plaintiff's RFC as assessed by the ALJ. The Commissioner argues there was no error because the testimony of a vocational expert is not required when the ALJ concludes a claimant can return to her past relevant work.

---

[9]Further, the Court finds the ALJ's discussion of his RFC assessment implicitly indicates the degree of limited contact Plaintiff should have with peers and supervisors.  The ALJ found Plaintiff was rated with a global assessment of functioning (GAF) score of 55, denoting moderate difficulty in social, occupational, or school functioning.  [R. 20.] The ALJ also noted Plaintiff had moderate difficulties in social functioning [R. 16], and her anger, irritability, and resentment would likely interfere with her capacity to appropriately relate to others [R. 19].  Further, Plaintiff does not argue the ALJ improperly determined her credibility or improperly weighed the testimony of any treating physician; therefore, the Court finds it unclear as to what additional finding Plaintiff is expecting, and her argument provides the Court with no guidance.  Therefore, the Court concludes the ALJ's finding that Plaintiff had "moderate difficulty" with respect to social interaction is sufficient to identify the degree to which Plaintiff's contact with supervisors and peers should be limited.

The ALJ found that Plaintiff had the following RFC:

> [T]he claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following non-exertional limitations: she is able to sustain concentration necessary for unskilled work, and requires to work in relative isolation with limited contact with peers and supervisors.

[R. 17, Finding 5.]  Based on this RFC, which the Court finds to be supported by substantial evidence, the ALJ found Plaintiff was capable of performing past relevant work as a bakery line worker and in housekeeping.  [R. 21.]

A claimant is not disabled within the meaning of the Act if she can return to past relevant work as she actually performed the work or as it is customarily performed in the economy, SSR 82-62, 1982 WL 31386, at *3 (1982); the claimant bears the burden of establishing her inability to work within the meaning of the Act, *see* 42 U.S.C. § 423(d)(5). Because the ALJ found at step four that Plaintiff could perform her past relevant work, there was no need to proceed to the fifth step to determine whether other jobs existed that Plaintiff could perform.  *See Pass*, 65 F.3d at 1203 (citing *Hunter*, 993 F.2d at 35) (stating that if an applicant's claim fails at any step of the process, the ALJ need not consider the subsequent steps of the sequential evaluation).

However, the ALJ performed the step five analysis *as an alternative* reason for finding Plaintiff was not disabled, and he found there were other jobs in the national economy Plaintiff could perform.  [R. 21.]  As part of his step five analysis, the ALJ proffered the following hypothetical to the vocational expert:

> All right, the first hypothetical I want you to consider assumes the vocational factors of an individual who is 48 years of age at the date of hearing who possesses no severe exertional impairments, however, in the non-exertional area, it would be attention and sustained concentration necessary to

> perform unskilled work, but would also be work that required
> relative isolation with limited contact with the general public.

[R. 39.]

The Court observes that the ALJ presented the vocational expert with a hypothetical question that fairly included all of the limitations that were contained in Plaintiff's RFC assessment, although not verbatim. [*Compare* R. 39, *with* R. 17.] Because this hypothetical question included all of Plaintiff's credible limitations, the Court finds the hypothetical allowed the vocational expert to provide a helpful opinion as to whether occupations existed in the national and local economies Plaintiff could perform. *Walker*, 889 F.2d at 50 ("In order for a vocational expert's opinion to be relevant or helpful, it must be based upon a consideration of all other evidence in the record, and it must be in response to proper hypothetical questions which fairly set out all of [the] claimant's impairments." (citations omitted)). Accordingly, because the ALJ was not required to perform step five of the sequential evaluation, and the hypothetical to the vocational expert fairly included the limitations in Plaintiff's RFC, the Court finds no error on the basis of the ALJ's hypothetical.

**Additional Evidence**

Finally, Plaintiff argues the Appeals Council failed to properly consider the evidence Plaintiff submitted with her request for review of the ALJ's decision. The additional evidence submitted to the Appeals Council was a questionnaire—entitled Medical Assessment of Ability to Sustain Work-Related Activities—and a psychological evaluation, both completed by Dr. Ruffing. [R. 356–65.] Both documents were prepared based on Dr.

Ruffing's evaluation of Plaintiff on November 10, 2009.[10]  The questionnaire required Dr. Ruffing to assess the percentage of an eight-hour work day Plaintiff can satisfactorily perform certain functions.  [R. 356–57.]  Dr. Ruffing indicated Plaintiff could relate to co-workers for 60% of an eight-hour work day, deal with the public for 50% of an eight-hour work day, interact with supervisors for 50% of an eight-hour work day, and maintain attention/concentration for 40% of an eight-hour work day.  [R. 356.]  Dr. Ruffing also indicated that for 50% of an eight-hour work day, Plaintiff could behave in an emotionally stable manner and relate predictably in social situations.  [R. 357.]

In his psychological evaluation, Dr. Ruffing noted Plaintiff's complaints, medications, and vocational history, as well as documents he reviewed and Plaintiff's personal history, activities of daily living, and substance abuse history.  [R. 360–61.]  Dr. Ruffing then noted his observations and Plaintiff's "Mental Status Functioning" and reported Plaintiff's scores on several tests.  [R. 362–65.]  Based on Dr. Ruffing's evaluation, Plaintiff's psychological impression indicated Major Depressive Disorder and Adjustment Disorder with Anxiety—Features of Posttraumatic Stress Disorder.  [R. 365.]  Dr. Ruffing opined Plaintiff's capacity to attend and focus was impaired "to some degree by her level of emotional distress and psychiatric symptomatology."  [*Id.*]  Dr. Ruffing further opined Plaintiff "would experience impairment in her ability to manage the concentration, persistance, and pace required in a typical work environment."  [*Id.*]

---

[10] Dr. Ruffing's November 10, 2009 evaluation [R. 356–65] occurred six weeks after the ALJ issued his decision finding Plaintiff was not disabled [R. 10–23].

In the Fourth Circuit, a reviewing court must include new evidence reviewed by the Appeals Council in its consideration of the record as a whole in determining whether substantial evidence supports the ALJ's decision:

> The Appeals Council must consider evidence submitted with the request for review in deciding whether to grant review "if the additional evidence is (a) new, (b) material, and (c) relates to the period on or before the date of the ALJ's decision." Evidence is new within the meaning of this section if it is not duplicative or cumulative. Evidence is material if there is a reasonable possibility that the new evidence would have changed the outcome.

*Wilkins v. Sec'y, Dep't of Health & Human Servs.*, 953 F.2d 93, 95–96 (4th Cir. 1991) (citations and footnote omitted). When the Appeals Council considers additional evidence in denying review of a claim, it is incumbent on the Appeals Council to give some reason and explanation for finding that the additional evidence does not justify further administrative action.[11]  *See, e.g.*, *Belue v. Astrue*, No. 1:09-cv-942, 2010 WL 3734714, at *3 (D.S.C. Sept. 20, 2010).

---

[11]The Court recognizes that there is a split of authority as to whether the Appeals Council should be required to articulate its reasoning when it accepts and considers additional evidence but denies review of the ALJ's decision. *See Jackson v. Astrue*, No. 0:08-cv-579, 2009 WL 1181178, at *5 (D.S.C. May 1, 2009) (discussing split of authority). However, a review of the cases in the District of South Carolina reveals that a majority of the judges in this District require the Appeals Council to give some explanation. *See Roberts v. Astrue*, No. 0:10-cv-867, 2011 WL 1356776, at *1–2 (D.S.C. Apr. 11, 2011) (Gergel, J.); *Lewis v. Astrue*, No. 9:09-cv-3134, 2011 WL 901000, at *4 (D.S.C. Mar. 15, 2011) (Childs, J.); *Belue v. Astrue*, No. 1:09-cv-942, 2010 WL 3734714, at *3 (D.S.C. Sept. 20, 2010) (Seymour, J.); *Cagle v. Astrue*, No. 2:09-cv-115, 2010 WL 3734234, at *3 (D.S.C. Sept. 20, 2010) (J.F. Anderson, J.); *Chapman v. Astrue*, No. 07-cv-2868, 2010 WL 419923 (D.S.C. Jan. 29, 2010) (Wooten, J.) (adopting Report and Recommendation of magistrate judge); *Suber v. Comm'r*, 640 F. Supp. 2d 684, 688 (D.S.C. 2009) (Floyd, J.); *Priestley v. Astrue*, No. 6:08-546, 2009 WL 1457152, at *14–15 (D.S.C. May 22, 2009) (G.R. Anderson, J.) (adopting Report and Recommendation of magistrate judge); *Jackson*, 2009 WL 1181178 (Currie, J.) (adopting Report and Recommendation of magistrate judge); *Raymond v. Astrue*, No. 2:08-cv-974, 2009 WL 632317, at *6 (D.S.C. Mar. 11, 2009) (Blatt, J.) (adopting Report and Recommendation of magistrate judge); *Wheelock v. Astrue*, No. 9:07-cv-3786, 2009 WL 250031, at *9 (D.S.C. Feb. 3, 2009) (Herlong, J.); *Harmon v. Apfel*, 103 F. Supp. 2d 869, 873 (D.S.C. 2000) (Norton, J.).

Although to be considered by the Appeals Council the additional evidence must relate to the period on or before the date of the ALJ's decision, "[t]his does not mean that the evidence had to have existed during that period. Rather, evidence must be considered if it has any bearing upon whether the Claimant was disabled during the relevant period of time." *Reichard v. Barnhart*, 285 F. Supp. 2d 728, 733 (S.D.W. Va. 2003) (quoting 20 C.F.R. § 404.970(b)). Additionally, new evidence is "material" when it contradicts the ALJ's findings and conclusions regarding the severity of the claimant's medical problems. *See Vega v. Comm'r of Soc. Sec.*, 265 F.3d 1214, 1219 (11th Cir. 2001).

It is within the purview of this Court to determine whether evidence is new and material. *Meyer v. Astrue*, No. 3:08-3828, 2010 WL 1257626, at *5 (D.S.C. Mar. 25, 2010) (citing Fourth, Eighth, and Eleventh Circuit cases for proposition that whether evidence is new, material, and related to the relevant time period is question of law to be reviewed de novo). Here, the Court finds the evidence submitted to the Appeals Council was not new because it is duplicative and cumulative. *See Wilkins*, 953 F.2d at 96 (citing *Williams v. Sullivan*, 905 F.2d 214, 216 (8th Cir. 1990)). Dr. Ruffing based his opinion on the November 10, 2009 evaluation, as well as Plaintiff's records and history. [R. 360–61, 365.] While the questionnaire arguably provides more detail to Dr. Ruffing's findings, the Court finds the additional evidence is duplicative and cumulative because it is entirely consistent with Dr. Ruffing's May 2007 evaluation, which was before the ALJ. [*Compare* R. 359–65, *with* R. 220–23.] Therefore, the Court finds the questionnaire and psychological evaluation were not new evidence.

Because the additional evidence Plaintiff submitted to the Appeals Council was not new, the Appeals Council was not required to consider the evidence, *see Wilkins*, 953 F.2d at 95–96 (citations omitted), and as a result, the Court finds the Appeals Council was not required to include its reasoning with respect to the additional evidence.[12]  Therefore, even without an Appeals Council explanation regarding its view of the additional evidence and based on the above discussion, the Court finds the ALJ's decision is supported by substantial evidence.

## CONCLUSION

Wherefore, based upon the foregoing, the Court recommends that the Commissioner's decision be AFFIRMED.

IT IS SO RECOMMENDED.

s/Jacquelyn D. Austin
United States Magistrate Judge

June 6, 2011
Greenville, South Carolina

---

[12] In *Meyer*, the court found no error in the Appeals Council's failure to explain the impact of evidence the claimant submitted to the Appeals Council.  2010 W L 1257626, at *5.  The court found the additional evidence was not new and therefore, "the Appeals Council [was] not required to articulate its reason for failing to consider such evidence."  *Id.*  Therefore, the holding in Meyer and the Court's holding here are consistent with the majority of cases in this District, which hold that if the additional evidence is new, material, and relates to the period on or before the date of the ALJ's decision, the Appeals Council must articulate why it is rejecting the additional evidence or why the additional evidence it considered does not provide a basis for changing the ALJ's decision.  *See supra* note 11.

31